# Kelly's Appeal.

1. Land paid for by Lafferty was conveyed to his wife; after his death, a creditor, to whom Lafferty was indebted at the time of the conveyance, ob- tained judgment against his administrator, with notice to his widow and heirs, and on an execution out of the Common Pleas his interest in the land was sold by the sheriff. *Held*, that the administrator, and not the judgment- creditor, was entitled to the proceeds of sale ; the wife not having claimed the land either before or after Lafferty's death.

2. That Lafferty was indebted at the time of the conveyance to his wife, did not of itself render the conveyance fraudulent.

3. The judgment having been obtained after Lafferty's death, was not a lien on his land, and the fund arising from the sheriff's sale was payable to the administrator and distributable by the Orphans'- Court only.

October 20th 1874.    Before AGNEW, C. J., SHARSWOOD, WIL- LIAMS, MERCUR and GORDON, JJ.

Appeal from the Court of Common Pleas of *Crawford county :* No. 54, of October and November Term 1873. In the distribu- tion of the proceeds of the sheriff's sale of the real estate of Robert Lafferty, deceased.

So far as could be ascertained from the statement in the paper

books and the auditor's report, the facts in this case appear to be as follows:—

On the 21st of January 1871, Emanuel Ecker commenced an action of assumpsit in the Court of Common Pleas of Allegheny county against James D. Kelly, administrator, &c., of Robert Lafferty, deceased, with notice to Susanna Lafferty, his widow, and James Lafferty and others, his children. The sheriff returned "summoned" as to Kelly, and "nihil" as to the widow and children. The declaration was on a number of promissory notes, set out in it, made by the decedent, the first dated on the 14th of May 1868, and the last dated July 23d 1868, and also in the common counts. The whole amount due January 1st 1871 on the plaintiff's claim, as filed, was $1740. The administrator pleaded "*plene administravit.*" An arbitration was had under the compulsory arbitration law, and on the 10th of March 1871 the arbitrators made an award as follows:—

"We do find and award in favor of the plaintiff the sum of· $1755, and we further find that the sum of $650, part of the above principal sum, was contracted by defendant's intestate in his lifetime, A. D. 1863. And we further find that the defendant has administered fully all the personal estate of the intestate, and all the real estate standing in the name of said deceased, so far as has come to the knowledge of said defendant. But we do find that the defendant's intestate purchased, in 1864, certain real estate, in the county of Crawford, and the title to the same was placed in the name of his wife, Susanna Lafferty, by deed from R. R. Johnson and wife, dated September 16th 1864, as recorded (&c.). Also, deed from Frederick Wightman, dated October 19th 1864, as recorded (&c.). And that $2000, at least, of the purchase-money thereof was paid by said Lafferty upon one or both of the said tracts of land, out of his own money and estate."

Judgment was duly entered on the award; the plaintiff transferred the judgment to Crawford county. In that county, to August Term 1871, a scire facias on the judgment was issued, with notice to the widow and children of decedent. The sheriff returned "scire feci" as to the widow and Mary J. Lafferty, one of the children, and "nihil" as to the other children and the administrator.

An alias scire facias was issued to the children not served in the original, and the sheriff returned "nihil;" judgment was entered on the scire facias, which was liquidated February 23d 1872 at $1851.56. A fi. fa. was issued against the administrator, widow and children, and the real estate mentioned in the writ, but being in the name of the widow of the decedent, was levied on and condemned. Under a venditioni, the property named in the fi. fa. and the inquisition, was sold on the 5th of August to John Phillips for $2150, the proceeds of sale paid into court, and

[Kelly's Appeal.]

Thomas Roddy, Esq., appointed auditor to report distribution. Before him the money was claimed by Ecker, the plaintiff in the execution, and by the administrator of Lafferty.

In connection with the foregoing statements, the auditor found :—

That in the distribution of the assets which had previously come into the hands of the administrator, and which were insufficient to pay all the decedent's debts, Ecker received a pro rata dividend as a creditor of the decedent; that in the suit by Ecker against Kelly, as administrator of Lafferty, it had been shown that a large portion of the purchase-money of the land sold under the execution had been furnished by the decedent. The grounds of Ecker's claim were :—

1. The administrator claimed to have settled the whole estate.

2. The claims of other creditors were barred by the Statute of Limitations, so far as the land sold on Ecker's judgment is concerned.

3. The intestate did not die seised of the land from which this fund is raised, nor had he any title ; his administrator, therefore, could not sell the land, and could not control the fund raised from the sale of it by another.

4. If Lafferty had owned the land, with title in himself, but conveyed it to another in his lifetime, even if he were indebted at the time of the conveyance, his administrator could not sell the land for the payment of such debts. Under such circumstances the land would be bound only by such debts as were liens at the time of the conveyance.

The auditor also reported as his opinion, amongst other things, that " the fund being derived from the sale of the decedent's interest in the real estate, it must be distributed as such." He awarded the whole of the fund to Kelly, the administrator, &c., of the decedent.

One of the exceptions by Ecker was that the fund in court should have been appropriated to his judgment. The court (Lowrie, P. J.) sustained the exceptions and ordered the money in court to be paid to Ecker.

The administrator appealed to the Supreme Court, and assigned the decree of the court below for error.

*Roe Reisinger* and *A. B. Richmond*, for appellant.—No judgment having been obtained against the decedent in his lifetime, his administrator was entitled to the fund : Morrison's Case, 9 W. & S. 117 ; Kittera's Estate, 5 Harris 416 ; Willing *v.* Yohe, 1 Phila. R. 223 ; Whiteside *v.* Whiteside, 8 Harris 474 ; Ashford *v.* Ewing, 1 Casey 215. The Act of February 24th 1834 must be strictly pursued : Downer *v.* Downer, 9 Watts 63 ; Craven *v.* Bleakney, Id. 20 ; Strickler *v.* Sheaffer, 5 Barr 241. The policy of the law is to carry the settlement of the estates of decedents into the Orphans'

Court: Everman's Appeal, 17 P. F. Smith 336; Bull's Appeal, 12 Harris 286.

*D. McCoy*, for appellee.—Such voluntary conveyances, as in this case, are good between the parties and voidable only to such creditors as were intended to be defrauded: Byrod's Appeal, 7 Casey 241. Others than Ecker, who claimed that the land was conveyed in fraud of his rights, cannot go behind the sale, by assuming a position which assails it and the lawfulness of the conversion: Hutchman's Appeal, 3 Casey 209; Walters *v.* Pratt, 2 Rawle 265. The decedent not having died seised, the Orphans' Court had no jurisdiction to sell the land for the payment of his debts: Shontz *v.* Brown, 3 Casey 123.

Mr. Justice WILLIAMS delivered the opinion of the court, October 11th 1875.

This case comes before us on the appeal of James D. Kelly, administrator of Robert Lafferty, deceased, from the decree of the Court of Common Pleas of Crawford county, distributing the proceeds of the sale of the decedent's real estate. The sale was made under an execution on a judgment obtained by Emanuel Ecker, against the administrator, with notice to the widow and heirs. The proceeds of sale were claimed by the plaintiff in the execution, and also by the administrator, and an auditor was appointed to make distribution. Treating the fund as the product of the sale of the intestate's interest in the land, the auditor appropriated the money to the administrator, but the court, on exceptions to his report, ordered it to be paid to the plaintiff in the execution. The fund was decreed to the plaintiff on the ground that the intestate did not die seised of the land; that its conveyance to his wife, after a part of the indebtedness had been contracted, for which the judgment against the administrator was obtained, was in fraud of the rights of the plaintiff as a creditor; and as it did not appear that other creditors of the intestate were defrauded by the conveyance, the plaintiff alone had the right to pursue the land for his debt, and was consequently entitled to the proceeds of sale. The difficulty in determining how the fund should be distributed arises from the meagerness of the facts reported by the auditor and disclosed by the record. The land was sold as the property of the intestate, and if it was his, it is clear that under the provisions of the Act of 24th of February 1834, sect. 33, Pamph. L. 77, the administrator is entitled to the fund arising from the sale upon giving security for its distribution, as required by the act: Morrison's Case, 9 W. & S. 117. If, however, the intestate did not die seised of any interest in the land, if he had no estate in it, which descended to his heirs subject to the payment of his debts, it would seem to follow, as a logical and necessary consequence, that the administrator is not

entitled to the proceeds of sale, and has no such standing in court as will enable him to gainsay the plaintiff's rights to the fruits of his execution. But how does it appear that the intestate had no interest or estate in the land at the time of his death? The auditor has not so found, nor has he found that the land was conveyed to the intestate's wife in fraud of his creditors. It is true, the arbitrators on whose award the judgment was obtained, besides finding and awarding in favor of the plaintiff the sum of $1755 with costs, further found that the sum of $650 of the above principal sum was contracted by defendant's intestate in his lifetime in 1863, and that in 1864 he purchased certain real estate in the county of Crawford, Pennsylvania, and the title to the same was placed in the name of his wife, Susannah Lafferty, by deed from R. R. Johnson and wife, dated September 6th 1864, as recorded in said county, in, &c., and by deed from Frederick Wightman, dated October 4th 1864, as recorded, &c., and that $2000 at least of the purchase-money thereof was paid by said Lafferty upon one or both of said tracts of land, out of his own money and estate. The arbitrators were authorized to find the amount of the intestate's indebtedness to the plaintiff, but they had no authority to find the other facts set out in the award. So far as their finding is within the terms of the submission, it is conclusive on the parties; but so far as it was not authorized by the submission it is a nullity for want of jurisdiction, and consequently it can have no influence in determining the question of distribution. Whether the auditor intended to endorse the finding of the arbitrators and to make it a part of his report, is not so clear; but conceding that he did, what is the proper and legitimate inference from the facts so found? Is it that the conveyance was made to the wife for the purpose of defrauding the intestate's creditors? In the absence of any other evidence showing the character of the transaction, are we bound to presume that the conveyance was fraudulent because the intestate was indebted to the plaintiff at the time it was made? Or must we presume that it was a gift to the wife and was voidable on account of the husband's indebtedness? The statute does not render void a conveyance made by a man simply because he is indebted: Mateer *v.* Hissim, 3 Penna. R. 164. If it had been shown that the wife claimed the ownership of the land in the lifetime of her husband or that since his death she had asserted title to it as against his creditors and heirs, then it might be inferred that the conveyance was made with the intent of defrauding the plaintiff. But in the absence of any such claim it seems to me that the presumption is that she took the title in trust for her husband; not that she took it for the purpose of defrauding his creditors. She had notice by the service of the scire facias, that the plaintiff intended to charge the land with payment of his debt, but she made no defence to the proceeding. She did not plead

[Kelly's Appeal.]

that her husband had no estate or interest in the land at the time of his death, and that it was not chargeable with the payment of his debts. She allowed judgment to be entered against her by default, and she made no objection to the sale of the land as the property of her husband, or to the acknowledgment of the sheriff's deed. Under the circumstances, is she not estopped from denying that her husband had any estate or interest in the land? and if so, is not the plaintiff equally estopped from denying that he died seised of the land and from averring that the conveyance to the wife was fraudulent and void as to creditors? But whether so or not, the burthen of showing that the intestate did not die seised of any interest in the land is on the plaintiff; and it seems to us that under all the circumstances we are bound to presume that the conveyance to the wife was made with an honest and not with a fraudulent intent; that the wife took the legal title in trust for her husband, and consequently that he had such an estate in the land as descended to his heirs and was chargeable with the payment of his debts. If so, the administrator, as already suggested, is entitled to the proceeds of sale. The plaintiff's judgment having been obtained since the intestate's death, is not a lien within the meaning of the act, and therefore, by its express provisions, the money arising from the sale is payable to the administrator, upon his giving security for its legal distribution. Whether the debts of the other creditors have ceased to be liens, is not a question before us. If the administrator is entitled to the fund, the Orphans' Court has exclusive jurisdiction of its distribution: Kittera's Estate, 5 Harris 422 ; Whiteside v. Whiteside, 8 Id. 474. Whether therefore the plaintiff is entitled to the whole fund, or whether it is to be distributed pro rata among all the creditors, is a matter for the determination of the court having jurisdiction of the estate out of which the fund for distribution arises.

It is ordered that the decree of the Court of Common Pleas be reversed, and that the fund for distribution be paid to the appellant, as administrator of the estate of Robert Lafferty, deceased, upon his giving bond to the satisfaction of the court conditioned for the legal distribution thereof; and it is further ordered, that the costs of this appeal be paid by the appellee, the plaintiff in the execution.